May Term,
1851.
—————
JOHNSON
v.
THE STATE.

JOHNSON *v.* THE STATE.

The Court may order the defendant's witnesses to be removed out of the hearing of the evidence for the prosecution.

By the statute in force previously to 1843, a person who was convicted of the crime of forgery was not rendered infamous, and the provisions of the R. S. of 1843, apply only to subsequent convictions for that crime.

In prosecutions, persons of skill can be called in to testify as to the genuineness of any bank note, &c. It is not necessary that they should testify to the genuineness of the signatures.

An accomplice is a competent witness.

*Wednesday,*
*July 9.*

ERROR to the *Switzerland* Circuit Court.

BLACKFORD, J.—This was an indictment, found at the *March* term, 1851, of the *Jefferson* Circuit Court, against *John Johnson.* The venue was afterwards changed to *Switzerland* county.

The indictment charges that the defendant, on the 15th of *November*, 1850, at, &c., did, unlawfully and feloniously, barter and sell to one *Almon R. Baldwin*, one counterfeit bank note, purporting to be issued by the bank of *Kentucky*, &c., with intent to have said note put in circulation, he, the defendant, knowing the same to be counterfeit, &c.

Plea—not guilty. Verdict for the state. Motion for a new trial overruled, and judgment on the verdict.

The first error assigned is, that the Court, on the plaintiff's motion, ordered the defendant's witnesses to be removed out of the hearing of the evidence for the prosecution. We do not consider this order objectionable; and there is an express authority in its favor. *Southey* v. *Nash*, 7 Carr. and Payne, 632.

The second error assigned is, that *Baldwin*, the person named in the indictment, was admitted as a witness for the state. The defendant objected to the competency of this witness on the ground that he had been convicted, in 1842, in the state of *Louisiana*, of the crime of forgery. The Court overruled the objection, and we think correctly. The statute on the subject in force previously to 1843 was, that every person who might thereafter be convicted

of murder, treason, rape, arson, manstealing, or perjury, should, after such conviction, be deemed infamous, and be incapable of giving evidence in any Court of justice. R. S. 1838, p. 79. As forgery was not included in that list, a person was not, by a conviction of that crime, rendered infamous, it being a maxim that *expressio unius est exclusio alterius.* There are two statutory provisions, enacted in 1843, relative to the question before us. The first is as follows: "That no person duly convicted, &c., of a crime in this or any other state, declared by the law of this state to be infamous, shall be admitted as a competent witness on the trial of any cause," &c. R. S. p. 719. The following is the other provision: "Every person, who may be *hereafter* convicted of the crimes of treason, murder, rape, arson, burglary, robbery, manstealing, forgery, or willful and corrupt perjury, shall, ever after such conviction, be deemed infamous, and shall be incapable of holding any office, &c., or giving evidence in any Court of justice." R. S. p. 999. We consider those provisions to apply only to subsequent convictions for forgery. The present witness, having been convicted previously to the taking effect of those provisions, is not affected by them.

It is also assigned for error, that the witnesses examined by the state to prove the bank note described in the indictment to be a counterfeit, did not testify as to the signatures to the note. There were four witnesses having skill in regard to counterfeit bank notes, examined by the state. One of them said that he thought the bill in question a counterfeit, and that he judged by the general appearance of the bill, by the impression made by the plate, and also by the signatures. The three others said they judged entirely by the impression made by the plate on the face of the bill, and by the general appearance of the bill, not by the signnture of the cashier or president; that they were not acquainted with their handwriting; that they thought the bill in question counterfeit, and stated as a mark that the eyes in the engraved heads on this bill were not as good as the

May Term,
1851.

JOHNSON
v.
THE STATE.

genuine bills. They also testified to other defects in the bill. The note was then offered in evidence; the defendant objected; but the objection was overruled. The statute on the subject says: "Persons of skill may be called to testify in prosecutions under the laws of this state as also in civil cases, whether any note or notes, bill or bills, draft, or certificate of deposite, are genuine or otherwise, leaving, in all cases, the credibility of such persons to the jury. But whenever it is in question whether any such note, bill, draft, or certificate, is genuine or not, three such persons at least shall be required to testify in such case, to the point or points in question; except on an indictment for a larceny," &c. R. S. p. 993.

We do not think that, under this statute, the witnesses must testify as to the genuineness of the signatures to the instrument. The point in question here was, whether the note described in the indictment was a counterfeit? And it appears to us that the witnesses might form their opinions on that question entirely from the impression made by the plate on the face of the note, and by the general appearance of the note. There can be no doubt but that counterfeit bank notes are quite as frequently detected, at a distance from the bank, by defects in the impression made by the plate and by the general appearance of the notes, as by an examination of the signatures.

There is one other error assigned, and that is, that the Court mistook the law in one of the instructions given to the jury. The instruction excepted to is, that the Court did not consider the witness, *Baldwin*, to be an accomplice. In this instruction we think the Court erred. *Baldwin*, on the 15th of *November*, 1850, bought the note from the defendant knowing it to be counterfeit, and passed it off, on the same day, as genuine. He was, by his own confession, an aider and abettor of the crime charged against the defendant, and liable, therefore, to the same punishment with him. R. S. p. 970. The fact that this witness was such aider and abettor, made him a *particeps*

*criminis*. The consequence is, that he was an accomplice with the defendant, as that term embraces all the *participes criminis*, whether they be principals in the first or second degree or merely accessories. Foster's Crown Law, 341.— 1 Russell on Crimes, 29. But still we are of opinion that the judgment before us should be affirmed. *Baldwin*, notwithstanding that he was an accomplice, was a competent witness, upon whose testimony alone the indictment might have been sustained. That he was an accomplice, was an objection only to his credibility. We understand from the transcript that it contains all the evidence. The testimony of *Baldwin*, which, if true, clearly establishes the defendant's guilt, is materially confirmed by other evidence in the cause. Considering the evidence altogether, and viewing *Baldwin's* testimony only as that of an accomplice, the case is, we think, so decidedly against the defendant, that it would not be proper in this Court to disturb the verdict.

*Per Curiam.*—The judgment is affirmed with costs.

*J. G. Marshall*, for the plaintiff.

*D. Wallace*, for the state.