## SOLANDER *v.* THE PEOPLE.

CHANGE OF VENUE — *grounds for.* Statutes relating to change of venue examined with reference to a petition which is regarded as defective, in that the grounds of petitioner's belief in the causes for change of venue are not sufficiently set out.

CONTINUANCE *in the discretion of the court.* The continuance of a cause to the next term of court, there being no reason alleged for an immediate trial, rests in the discretion of the court.

JUROR — *preconceived opinion as ground of challenge.* Under the act of 1872 (9 Sess. 94), a preconceived opinion in the mind of a juror, with reference

to the guilt or innocence of the prisoner, is not a ground of principal challenge but of challenge to the favor.

*Exception to ruling on challenge to the favor.* Upon challenge to the favor, the court determines as matter of fact whether the juror stands indifferent between the parties, and the finding of the court in that particular is conclusive and not subject to review in this court.

WITNESS — *competency of accomplice.* The fact that a witness participated in the crime charged goes to his credibility, but does not render him incompetent to testify.

EVIDENCE — *declarations of one when received against another.* A woman may conspire with others to procure miscarriage of her own person, and the conspiracy being shown, her acts and declarations in furtherance of the common design are evidence against others engaged with her in the criminal act.

Where deceased (a woman pregnant with child) shortly before her death visited the prisoner and upon her return told the witness the object of her visit and what took place on that occasion, such declarations were of the *res gestœ* and were properly received to explain and give character to the visit.

And such declarations were proper for the consideration of the jury in connection with other evidence in the cause to determine the fact of conspiracy as well as other facts.

PRACTICE — *whether the fact of conspiracy is for court or jury.* Although evidence tending to prove an illegal combination, preliminary to receiving the declarations of any party to such combination, is for the court in the first instance, it may be submitted to the jury to find the fact.

WITNESS — *credit to be given to an accomplice — omission to charge.* Where the principal witness is an accomplice of the prisoner in the perpetration of the crime, and he is supported by other witnesses and by corroborating circumstances as to some portions of his testimony, the failure of the court to charge the jury as to the weight to be given to his testimony and to the corroborating evidence is not a ground for reversal.

PRACTICE — *omission to charge the jury on one point.* Nor can it be objected that the court declined to charge as to the weight of circumstantial evidence, there being a proper charge as to the doctrine of reasonable doubt.

WITNESS — *prisoner as such.* The testimony of the prisoner who has taken the stand in her own behalf is a fair subject of criticism, and counsel for the people is at liberty to comment upon the failure of the prisoner to contradict a witness for the people.

PRACTICE — *when objection should be made.* Whether a petit jury has been regularly selected and summoned will not be considered in this court, if there was no challenge to the array or other objection on that ground before trial in the court below.

*Error to District Court, Boulder County.*

THE indictment was for manslaughter, and contained

three counts. In the first count, it was charged that the defendant caused the death of Fredericka Baum by the use of a bougie in and upon the body of the said Baum, she being then pregnant with child. In the second count, it was charged that the death was caused by the use of an instrument unknown. In the third count, it was charged that the defendant administered to the said Baum a certain noxious and destructive substance called Gossypium, and other noxious and destructive substances, to the jurors unknown, with intent thereby to procure miscarriage of the said Baum, she being then pregnant with child, and thereby caused her death. At the June term, 1872, the defendant petitioned for change of venue, alleging, in her petition, "that she entertained serious and well-grounded fears that she will not receive a fair and impartial trial in this court, on account of the prejudice which she believes exists in the mind of the judge thereof against her, and that said fears rest upon the fact that petitioner has, within the last two days, heard, and she believes what she has heard to be true, that said judge expressed an opinion previous to the finding of said indictment against her by the grand jury, and, subsequent thereto, that she was guilty of the procuring the abortion therein charged, and was cause of the death of said Fredericka Baum ; and that she has heard, and believes it to be true, that the said judge tried to prevent her from procuring bail, in said cause, at the last January term of said court. Petitioner further represents, to your honor, that she entertains serious and well-grounded fears that she will not receive a fair and impartial trial in this county, because the inhabitants of said Boulder county are prejudiced against the petitioner, so that she cannot receive a fair trial in said court; and that said fears are founded upon the facts that the physicians of said county, or many of them, tried to prejudice the minds of the jurors and people against her, and to make them believe she is guilty as charged in said indictment, and that they have, to a great extent, succeeded in doing so. And, also, that she has heard, and believes it to be true, that several of the

inhabitants of said county have been trying to prejudice
the minds of several of the inhabitants of the petit jury
summoned in this court to serve the present term against
petitioner, and have succeeded in making them believe that
she is guilty of the crime as charged in said indictment."
Several affidavits in support of the petition were of the
same tenor. The court denied the motion, and continued
the cause to the next term. At that term, Mr. Justice
WELLS was called to preside, and the first trial resulted in
disagreement of the jury, December 13, 1872. The cause
was then set down for trial on the 6th of January, 1873,
and a special venire ordered for that day. No objection
was made to this panel, and the second trial was begun on
7th of January, 1873. Objection was made to several
jurors, which is sufficiently stated in the opinion of the
court. Clemens Knauss, a witness for the people, testified
substantially as follows: That he knew the deceased since
the year 1867, and that she died on Tuesday, December 5,
1871 ; that shortly before her death he went to Boulder for
the prisoner, and told her that deceased desired to see her ;
a conversation then ensued between the witness and the
prisoner, in which the prisoner disclosed some knowledge
of deceased's condition, and of the nature of her illness.
Prisoner stated to witness that deceased had been taking
medicine from Denver, and that if she should die that medi-
cine would be the cause of her death ; " she said that would
clear her." The prisoner also inquired for the fœtus which
had come from deceased, and requested the witness to take
it away, as inquiry might be made for it. The witness
stated that he concealed the fœtus at prisoner's request. On
the following day the witness returned with prisoner to
Boulder, and upon that occasion prisoner told him " that
she wanted to get Berkley for her lawyer; that she wanted
to get Dr. Beard and Groseback over ; that they were good
friends of hers, and if she got them over for examination,
she would be all right; she said if any one should ask me
what is the matter, I should say I do not know, the doctor
will find it ; that I should keep still and not say any thing

about it." The witness also stated that on the Saturday preceding, he visited the prisoner at Boulder, in company with deceased, and upon that occasion the prisoner asked him if he had come to get her for deceased, and if deceased was there herself; that deceased and prisoner remained together for about one hour, during which time the witness was not present; that deceased, the prisoner and the witness then returned to deceased's home, and the prisoner remained there until Monday morning; the witness further stated, that about three weeks before that time, he had procured medicine in Denver, at deceased's request, for the purpose of producing miscarriage, and that deceased had taken such medicine; that he had applied to Dr. Peters of Valmont, for medicine for the same purpose, but without success; the witness also stated that deceased went to Boulder on the Thursday preceding her death, and that upon the road home she told him what was the object of her visit; the declarations of deceased upon this occasion, being called for, were objected to by the prisoner, the court received them however, and the prisoner excepted. The declarations of deceased were that she had visited the prisoner for the purpose of employing her to procure miscarriage, that the prisoner had stated that it would be necessary to use an instrument, and to procure medicine from St. Louis; that she would charge $30 for her services; the witness further stated, that the prisoner left some powders with deceased on Monday previous to the death of the latter, and that he gave deceased some of them; that deceased fainted after the taking of each powder; that deceased gave prisoner some chairs in part payment of the services of the latter. Other witnesses testified to the circumstances attending deceased's death. It was also in evidence that death was caused by an attempt to produce abortion, and that an instrument was used for that purpose. Dr. Allen, coroner, stated that the prisoner told him, at the inquest, that she supposed deceased was laboring under *prolapsus uteri*, and that she was treating deceased for that; he also stated that he saw no indications in the body of deceased, of *pro-*

*lapsus uteri;* it was also in evidence that a bougie, broken in three pieces, was found upon the premises, and that the injuries observed in the womb of deceased might have been produced by that instrument. It was also in evidence that the powder left with deceased, bore striking resemblance to gossypium, and that the effect of that drug is parturient and abortionary. The testimony as to the probable effect of the use of the instrument and of the powders, and the quality of the powders, was very voluminous. A witness also testified that when the bougie was found upon the premises of deceased, prisoner disclaimed any knowledge of it, and said she did not know what instrument was used for procuring abortions; that she had never seen one. The prisoner was put upon the stand as the only witness in the defense; she denied having used any instrument, and also that she had advised it; she admitted having given powders, but denied that they were gossypium, and averred that they were not intended to produce abortion.

Upon the argument, counsel for the people claimed before the jury, that the testimony of the witness, Knauss, was entitled to credit, from the circumstance that prisoner, although examined in her own behalf, had not contradicted said Knauss, as to conversations said to have been had by Knauss with the prisoner, and that prisoner's counsel had not interrogated her thereunto.

Upon this, the prisoner's counsel prayed the court to instruct the jury:

"That, in the examination of the prisoner provided for by the statute, which examination extends only to the facts and circumstances of the cause on trial, and does not confer on the prisoner the right to testify to facts or circumstances tending to impeach any of the witnesses in the cause. Therefore, the fact that defendant did not testify to facts or circumstances calculated to impeach any of the witnesses sworn in the case is not to be taken as properly commented upon, or as a circumstance against her."

But the court refused to so charge, and the prisoner excepted.

Prisoner also asked the following instructions :

" That, if the proof of her guilt rests on circumstantial evidence, unless the circumstances be such as to produce, in the minds of the jury, a moral certainty of her guilt, and of such a nature as not to be reasonably accounted for on the supposition of her innocence, but perfectly reconcilable with the supposition of her guilt, they ought not to convict the prisoner."

" The jury are instructed that they cannot find the fact of confederacy between the deceased and the defendant, to procure the abortion which is charged to have resulted in the death of deceased, from the declarations of the said deceased not made in the presence of the defendant. The declarations of the deceased can only be received to prove some fact which is material to be proved, after the confederacy has been established by other competent evidence, and if the jury fail to find a confederacy between the accused and defendant, to procure the abortion complained of, by evidence other than the declarations of the deceased, made, in the absence of defendant, to some third person, they should acquit."

Other instructions were asked, which it is not material to recite, and the court declined to charge as requested, and gave the following :

" The law, in the first instance, presumes the prisoner innocent of the crime wherewith she stands charged, and this presumption continues, and may avail to the acquittal of the prisoner, unless overthrown by evidence sufficient to exclude all reasonable doubt of her guilt. This is not, however, to be understood as requiring such a measure of proof as to exclude all doubt whatsoever. A reasonable doubt is such a doubt as grows out of the evidence by fair and reasonable deduction from the facts proven. You are not at liberty to go outside of the facts proven, nor to indulge in unreasonable deductions from the facts which are proven, in order to raise doubts. All reasonable doubts in the evidence are to be resolved in favor of the accused. In order to the

conviction of the prisoner, it must appear, by such a measure of proof as above prescribed:

"*First.* That the deceased, next before her death, was pregnant with child.

"*Second.* That the deceased, being so pregnant with child, the prisoner, with intent to procure a miscarriage of the deceased, used, or caused to be used, upon the person of the deceased, some instrument, or administered, or caused to be administered, to the deceased some noxious drug or substance, or both used such instrument and administered such drug or substance.

"*Third.* That, by reason of the use of such instruments, or the administration of such noxious drug or substance, or by reason of both, the deceased came to her death. It is not necessary that the prosecution should show the particular kind of drug or substance administered, nor that it was calculated to produce the miscarriage, nor what particular kind of instrument was used.

"Neither is it necessary that it should appear by the evidence that the prisoner, with her own hands, used any instrument upon the person of deceased, or that, with her own hands, prisoner administered to the deceased any drug or substance. If prisoner furnished any instrument to deceased or any other person with intent that deceased or any other person should use such instrument for the purpose of procuring the miscarriage of deceased, she being then pregnant, or if prisoner provided any noxious drug or substance with intent that deceased, being then pregnant, should administer the drug or substance to herself, or that any other person should administer it to her in order to produce the miscarriage of the deceased, prisoner thereby constituted the deceased, or the person to whom such instrument or drug was delivered or provided her agent and is accountable for all the acts of such person done in pursuance of the agency. And if such person, whether the deceased herself or any other, used such instrument upon the person of deceased, or administered such drug to deceased with the intent to produce the miscarriage of deceased, and

by reason of such treatment the deceased came to her death, the prisoner is guilty as charged in the indictment, even though she was not present at the time of the use of the instrument or administration of the drug.

"You are the exclusive judges of the credit which is due to each and every of the witnesses who have testified in the case and of the effect which shall be given to their testimony. If it appears to you by the evidence that the witness, Knauss, and the deceased were parties to the alleged combination to procure miscarriage of deceased, you ought to consider the circumstances in determining what credit is due to the testimony of Knauss and to the statement said to have been made by the deceased to Knauss. But if upon consideration of all the testimony you are of the opinion that Knauss has spoken truthfully in whole or in part, you will be warranted in acting upon so much of his testimony as you believe to be true, or in considering and acting upon the whole of his testimony if you believe it to be wholly true.

"You are not bound to consider the testimony of the prisoner as absolutely true nor any part of it as absolutely true, nor as equal to the testimony of one disinterested witness.

"You are to bear in mind that prisoner speaks in her own behalf to discharge herself of a criminal accusation, that the law does not permit the people's attorney to call witnesses to contradict or impeach her subsequent to the giving of her testimony, and you are to consider the great temptation which one so situated is under, to so speak, as to procure an acquittal. Upon consideration of these circumstances taken in connection with all the evidence you are to accord to the testimony of the person such credit and effect as you think it entitled to."

The prisoner was convicted and judgment was given that she be confined in the penitentiary for the term of three years.

Mr. G. BERKLEY and Messrs. BROWNE & PUTNAM, for plaintiff in error.

Mr. B. L. CARR, District-Attorney, and Mr. ALPHEUS WRIGHT, contra.

HALLETT, C. J. The questions presented in this record may be conveniently discussed in the order in which they arose in the court below.

Under the amendatory act of 1872 (9 Sess. 120), relating to venue, the petitioner must set forth in his petition the fact or facts which justify and support his belief that he will not receive a fair trial in the court where the cause is pending, in order that the court may judge of the sufficiency of such facts. In the prior statute on the same subject (R. S. 634), certain causes are specified which shall be sufficient to warrant a change of venue, as that the judge is interested in the suit, or prejudiced against the applicant, or that the inhabitants of the county are so prejudiced, etc. Construing these acts together, it is plain that the petitioner must now set forth in his petition the ground upon which the venue may be changed, as, that the judge or the inhabitants of the county are prejudiced against him, and also the facts which lead to the belief that such ground exists. Affidavits may be filed to show the truth of these facts, and if the ground upon which the change is asked sufficiently appears, the prayer of the petitioner will be granted; otherwise it should be denied.

In support of the allegation that the judge was prejudiced against her, petitioner averred that she had heard that the judge had expressed the opinion that she was guilty of the crime charged, and that, at a former term of court, he had tried to prevent her from procuring bail in the cause. The mere statement that she had heard such rumors, there being no averment as to the truth of them, may be dismissed without comment. As to the allegation that the inhabitants of the county were prejudiced against petitioner, it was averred that the physicians of the county, or many of them, and several of the inhabitants of the county, had been trying to

prejudice the minds of the people against her, and that they had succeeded, to a great extent. Neither the number of persons engaged, nor the means resorted to by them to create a prejudice in the minds of the people against the petitioner is stated. There is nothing in this to show that the petitioner could not obtain a fair trial in Boulder county, and, therefore, the petition was very properly denied.

In the argument of one of the counsel for plaintiff in error, it is assumed that the court granted the application, but refused to set the cause down for trial before another judge, or to make the order for change of venue at that term. The record does not disclose any such circumstances, and, of course, we cannot assume the existence of facts not stated in the record. The continuance of the cause at the June term was clearly within the discretion of the court, and cannot be questioned here. Whether the cause should proceed at that term, or stand over to another, was a matter of which the court below could best judge, and we will presume that there was good reason for the order made.

At the trial several jurors were challenged by the prisoner, upon the ground that they had formed or expressed an opinion upon the merits of the case, and the challenges were denied by the court. At the common law challenges to the poll were for principal cause, and to the favor, and the facts being ascertained or admitted, the former were determined by the court, as matter of law, and the latter was determined by triers, as matter of fact. In either case, the facts upon which the challenge was based were to be ascertained by triers, if any dispute arose concerning them, and in the case of a principal challenge, the triers proceeded no further. The fact being found, the law raised a manifest presumption of partiality, and the juror was set aside. Not so, however, upon the challenge to the favor, in which the question of indifferency was left to the judgment of the triers, to be determined upon the facts found by them. Bacon's Ab. *Juries*, E. 1, 12; *State* v. *Benton*, 2 Dev. & Bat. 196. In modern practice triers have not been called, and the fact, as well as the law, has been determined by the court; but it is

considered that this circumstance does not furnish ground for disregarding the distinction between the principal causes of challenge and challenges to the favor. *State* v. *Howard*, 17 N. H. 191. The fact upon which the challenge for principal cause was based was required to be entered of record, in order that the judgment of the law might be pronounced upon it. The fact being ascertained by triers, or by the court, acting in the place of triers, the law furnished the conclusion.

In the case of a challenge to the favor, the fact being ascertained, the matter of indifferency was still to be determined by the triers, or by the court acting in the place of triers. In one case the law declared the juror to be incompetent, when the fact was found to exist ; in the other the fact was evidence of bias or favor, upon which the triers or the court must determine whether the juror was indifferent. *People* v. *Bodine*, 1 Denio, 281 ; *State* v. *Benton*, *supra* ; *State* v. *Howard*, *supra*. A preconceived opinion, if fixed and determinate, although not characterized by malice or ill-will, has been generally regarded as a ground of principal challenge, while an opinion based upon rumor, and which does not appear to have taken firm hold of the mind of the juror, has been regarded, as cause for challenge to the favor only. *State* v. *Benton*, *supra* ; *State* v. *Howard*, *supra* ; *State* v. *Dove*, 10 Iredell, 469 ; *Ex parte Vermilyea*, 6 Cow. 355 ; *Schoeffler* v. *State*, 3 Wis. 823. Under the recent statute (9 Sess. 94) it is believed that this distinction cannot be longer maintained, for it is there provided that no person shall be disqualified to serve as a juror, by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused. We may pause here before taking up the proviso, to observe that the language of the act is not restricted to opinions based upon rumor or what are called hypothetical opinions, and that it appears to be entirely free from ambiguity. It may be fairly claimed that an opinion affected by malice or ill-will toward the accused is not within the terms of the act, for malice and ill-will may be made a distinct ground of challenge. If, however, a preconceived opinion is no longer a ground of principal

challenge, it is, by the terms of the proviso in the act, a ground of challenge to the favor, for it is there declared that the court shall be satisfied from the examination of the juror or from other evidence that he will render an impartial verdict in the cause, according to the law and evidence.

The pre-existing opinion which before the statute was a ground of principal challenge is now submitted to the court as matter for challenge to the favor, and the court must determine its sufficiency. Of course, a fixed opinion must always be regarded as good ground of challenge to the favor, since it is impossible to affirm that one who entertains such an opinion stands indifferent between the parties. So also an opinion less determined and positive, and, perhaps, originating in common rumor may be good ground of challenge to the favor, if the circumstances render it probable or possible that the juror may be influenced thereby upon the trial of the cause. In determining whether a juror will be biased by what he has heard of a cause, so much depends upon the intelligence and habits of thought of the juror, his disposition to judge impartially or otherwise, his business and social relations, and other circumstances which cannot be enumerated, that it would be difficult to follow any general rule. For this reason, probably, the legislative assembly did not attempt to prescribe such rule, and referred the matter to the courts, where the force of controlling circumstances may be respected.

Upon the language of the statute, however, it is plain that whatever the character of the opinion entertained by the juror, if it is merely an opinion as to the guilt or innocence of the accused, not affected by malice or ill-will, or any other disqualifying circumstance, the court is to determine as matter of fact whether the juror stands indifferent between the parties, and in this the court performs the office of triers at the common law. The opinion formed or expressed is not of itself a disqualifying circumstance, but if it produce a condition of mind, amounting to unindifference, the juror is disqualified, and the court is to determine upon the examination of the juror or other evidence, whether the

opinion has produced that result. In the exceptions before us, the evidence elicited upon the examination of the jurors is given. The record then states that the juror was challenged, or that he was challenged for cause, without more.

The examination disclosed that the jurors had heard much of the case, and one of them had talked with the witnesses a little, not a great deal. Two of them doubted whether they could act impartially, and one thought that he had a prejudice if nothing more. We are not informed whether all that was drawn out upon the examination of the jurors is embraced in the record, but it appears from what is given, in each instance, that the challenge was based upon an opinion entertained by the juror, upon the merits of the case, which, under the statute, was not a challenge for principal cause, but to the favor. Upon this, as we have seen, the court was required to decide whether the juror stood indifferent between the people and the accused, as matter of fact. Although the record does not state that this issue was submitted to, and determined by, the court, it does appear in every instance that the challenge was overruled by the court, and that the juror was allowed to sit in the cause. Upon this we are to presume that the duty assigned to the court by the law was performed, for the ruling of the court upon the challenge cannot take effect in any other way. If, however, it should be conceded that each of the jurors challenged held an opinion as to the guilt or innocence of the prisoner, and that the challenges interposed were for principal cause, and were so regarded by court and counsel, the statute having removed the disability arising from such opinion, the exception must be overruled.

Assuming that the court decided the question of indifferency in each case, as matter of fact, we are now to consider whether that decision is subject to exception and review in this court. It will be observed that the statute gives no exception, nor is the case within the provisions of section 245 of the criminal code. R. S. 254. That section relates to motions in arrest of judgment, for new trial, for continuance, and for change of venue, and cannot be extended to

questions of this kind. Another section of the criminal code (225, R. S. 246) requires the judge presiding to sign and seal any bill of exceptions presented to him in which the truth of the case shall be fairly stated, but this must be limited to questions of law, which, according to well-known rules, are subject to exception and review. At the common law, upon trial of the question of indifferency, decisions and opinions of the court as to the admissibility of evidence, and other questions of law arising upon the trial, may be reviewed in a court of errors, but the finding of the triers as to the fact of indifferency is conclusive. *State* v. *Ellington*, 7 Ired. 61 ; *State* v. *Dove*, 10 id. 469 ; *Ex parte Vermilyea*, 6 Cow. 559 ; *Freeman* v. *The People*, 4 Denio, 33 ; *Schoeffler* v. *State*, 3 Wis. 828; Bacon's Ab. "Juries" E. 1, 12.

In the case at bar no question was raised upon the trial of the challenges, as to the admissibility of testimony, or the regularity of the proceedings, but we are asked to review the finding of the court upon the evidence. For this there is no warrant in the statute or common law, and therefore we must decline to enter upon the question.

As to the witness Knauss, the fact that he was an accomplice in the commission of the crime, undoubtedly goes to his credibility, but he was not thereby rendered incompetent as a witness. Mr. Greenleaf says that it is a settled rule of evidence that a *particeps criminis*, notwithstanding the turpitude of his conduct, is not on that account an incompetent witness, so long as he remains not convicted and sentenced for an infamous crime ; and there are numerous authorities to the same effect. 1 Greenl. Ev., § 379 ; 4 Stark. Ev. 17.

In New York it has been held that a woman on whom an abortion has been produced is not an accomplice in the commission of the crime, but rather the victim of the act, and the same view appears to have been taken in Massachusetts. *Dunn* v. *The People*, 29 N.Y. 523; *Com.* v. *Wood*, 11 Gray, 85. But it is not necessary that she should appear to be an accomplice in order to make her declarations accompanying

acts done in furtherance of the criminal purpose evidence against another, who has joined in the unlawful act. She may be, and usually is, a party to the illegal combination to effect the abortion, and as this is the ground upon which the declarations are admitted, it can make no difference that she is not criminally liable for the act done. In some cases, probably, the woman is an unwilling subject, submitting to, but not actively joining in, the unlawful attempt, and in such cases the community of purpose which alone can make the acts and declarations of one admissible as evidence against his associate in crime, may be wanting. But where it appears that the woman not only submits to the unlawful attempt, but actively promotes it, by seeking the aid of others, and eagerly adopting the means suggested to accomplish the crime, it cannot be claimed that she is not a party to the criminal design. [ If the woman is not technically an accomplice, she may, nevertheless, conspire with others to produce the abortion, and the conspiracy being shown, her acts and declarations in furtherance of the common design are evidence against others engaged with her in the criminal act. \ 4 Stark. Ev. 403; 3 Greenl. Ev. 94.

The declarations of deceased, to which objection was made, were explanatory of the object of her visit to prisoner on Thursday before her death, and as to what took place at that interview. It appears that deceased resided about eight miles from where the prisoner lived, and these declarations were made by deceased when she was returning home, after the interview. It was important to show that a conference took place between the prisoner and deceased at that time, and the declarations of deceased, made immediately after the interview, give character to it, and may be said to be a part of it. *State* v. *Howard*, 32 Vt. 380; *Browning* v. *State*, 30 Miss. 657; *Bell* v. *Morrison*, 27 id. 84; *Johnson* v. *Sherwin*, 3 Gray, 374.

It is conceded that a mere narrative of past events, not made in furtherance of the criminal design, is not evidence against one who was not present at the time it was uttered.

*State* v. *Thibeau*, 3 Vt. 100; *Clawson* v. *State*, 14 O. S. 234; *State* v. *Dean*, 13 Ired. 63.

Although the statement of deceased was made after the interview with prisoner, and was, in one sense, a history of a past event, it was during the pendency of the criminal enterprise, and closely attendant upon an act done to promote the illegal purpose. If the evidence was admissible upon the principle of *res gestœ*, as I think it was, it would not have been proper to exclude it upon the ground that it was merely a narrative of a past event.

That a foundation had not been laid for the introduction of this evidence, by proof of conspiracy between the prisoner and deceased, does not appear to have been urged in the court below as an objection to allowing it to go to the jury, but counsel asked the court to charge the jury that the declarations of deceased were not evidence to establish the fact of confederacy between prisoner and deceased, and that such declarations could not be received until after proof of confederacy by other competent evidence.

Unquestionably, the evidence of illegal combination being offered as a foundation for the acts and declarations of de_ ceased, was for the court, in the first instance; but whether it should have been submitted to the jury to find the fact, is a question upon which the authorities are not uniform. 1 Greenl. Ev., § 111.

It is undoubtedly a general rule, that questions of fact, upon which depend the admissibility of evidence, are to be decided by the court: As, for instance, whether dying declarations were made under a sense of impending death. 1 Greenl. Ev., § 160. Whether confessions of guilt were voluntarily made. 1 Greenl. Ev., § 219. Whether a witness is rendered incompetent by reason of interest in the suit. *Dole* v. *Thurlow*, 12 Metc. 157. Whether search has been made for lost instrument, so as to allow secondary evidence of its contents to be given. *Foster* v. *Mackey*, 7 Metc. 531. In *State* v. *Dula*, Phillips (N. C.), 211, it was held that the same rule is applicable where proof is offered of a conspiracy, and this view appears to have been adopted

in Virginia, and at one time in Massachusetts. *Clayton* v. *Anthony*, 6 Ran. 291 ; *Odiorne* v. *Bacon*, 6 Cush. 190. The case in 6 Cushing was, however, silently overruled in *Com.* v. *Brown*, 14 Gray, 419, and the current of authority is to the effect that the evidence should be sufficient in the opinion of the court to make out a *prima facie* case, and should be submitted to the jury to find the fact.    *U. S.* v. *Hinman*, 1 Bald. C. C. 292 ; *State* v. *Thibeau*, 30 Vt. 104 ; *Fouts* v. *State*, 7 O. S. 476 ; *Browning* v. *State*, 30 Miss. 667 ; *Wiggins* v. *Leonard*, 9 Iowa, 194 ; 1 Greenl. Ev., § 111.

A question of this kind is often closely contested, and as there does not appear to be any inflexible rule of law which requires that it shall be determined by the court, I can see no impropriety in submitting it to the jury as the more appropriate tribunal to decide questions of fact.    *Bartlett* v. *Hoyt*, 33 N. H. 165.

The propositions contained in the instructions asked by counsel are, however, when applied to the evidence in this cause, incorrect.    It is undoubtedly true that the mere admission of the existence of a conspiracy by one of the parties thereto, is not evidence to establish the conspiracy against his fellows, but this principle is not applicable to declarations which are in themselves acts, or are accompanied by acts in furtherance of the common design.    This distinction is dwelt upon in 4 Stark. Ev. 406 ; and in *Clawson* v. *State*, 14 O. S. 234, cited by counsel, the rule that declarations of a stranger shall not be received to establish the conspiracy, is expressly limited to such as are not made in furtherance of any design common to himself and the prisoner.    From the nature of the case, the evidence of a combination to do an unlawful thing must usually be circumstantial, and the fact must be collected from collateral circumstances, and acts done in apparent concert, which tend to the accomplishment of the illegal purpose.    The evidence of such acts is of no higher nature than the declarations which accompany them, and show the intent with which they are done, and the means by which the illegal design is to be accomplished.

VOL. II.—9

The declarations of deceased, to the witness Knauss, were attendant upon an act done in furtherance of the criminal design, and explanatory of it, and were therefore proper for the consideration of the jury, in connection with the other evidence in the cause, to determine the fact of conspiracy as well as other facts. The principle upon which evidence of an act done is admitted, is broad enough to support the accompanying declaration, which explains and gives character to the act. 4 Stark. Ev. 403.

The court was also asked to charge the jury that if they believed from the evidence that the witness Knauss and the deceased were parties to the confederacy, their declarations should be regarded as coming from a corrupt source, and should be weighed cautiously, which was refused, and the court charged that if Knauss and deceased were parties to the alleged combination to procure miscarriage of deceased, that circumstance should be considered in determining what credit was due to the testimony of Knauss, and the statement said to have been made by deceased to Knauss. The court was not asked to charge the jury that the testimony of Knauss should be supported by other witnesses, or corroborating circumstances, and nothing was said by the court upon that point. It is said that courts will, in their discretion, advice a jury not to convict of felony upon the testimony of an accomplice alone, and without corroboration; and it is now so generally the practice to give them such advice, that its omission would be regarded as an omission of duty on the part of the judge. 1 Greenl. Ev., § 380. Upon this it would seem that where the testimony of an accomplice is not corroborated, the omission to give such advice would constitute error in the record, although no prayer should be presented to the court therefor. *State* v. *Haney*, 2 Dev. & Bat. 396. Where the jury are properly cautioned as to the credit due to an accomplice, a conviction may be had upon his testimony alone, and the verdict will not be disturbed. *State* v. *Haney, supra; Allen* v. *State*, 10 O. S. 304; *Commonwealth* v. *Bosworth*, 22 Pick. 399;

*State* v. *Stebbins*, 29 Conn. 473 ; *People* v. *Costello*, 1 Denio, 86 ; *People* v. *Dyle*, 21 N. Y. 578.

Upon the same reason which requires that the jury should be cautioned against accepting the testimony of an accomplice, where it is not corroborated by other testimony, they should be charged in regard to the effect of corroborative evidence in a case where there is such evidence ; and I have doubted whether the omission to charge on that point would not constitute error in the record. Conceding that such charge is useful and even necessary to guide the deliberations of the jury to a correct conclusion, and that it should be given in all cases in which a conviction is sought upon the testimony of an accomplice, it is nevertheless possible for the jury to pronounce correctly without such aid. The mere omission to charge upon a point of law is not the same as misdirection by which it appears more or less certainly or probably that the jury have been misled. It often happens in the trial of causes that the charge to the jury is not full upon all points ; and if this alone should be re garded as ground of reversal, the rights of litigants would be very insecure. I have found no case in which, the verdict being correct, the mere omission of the court to charge the jury as to the weight to be given to the testimony of an accomplice has been held to be error, for which a new trial should be granted. But if such is the rule where there is no testimony to corroborate the accomplice, and the text of Mr. Greenleaf certainly supports that view, I think that it cannot be extended to a case in which the accomplice is supported by other testimony. *Johnson* v. *State*, 2 Ind. 652. In this connection it may be necessary to remark that the testimony of Knauss was corroborated in material parts by the testimony of other witnesses against whom nothing is alleged. As to the interview on Thursday between prisoner and deceased, he is confirmed by the prisoner herself, and as to the visit to deceased on Saturday, and the fact that prisoner remained at deceased's house until Monday morning, he is supported by the witness Myers. The physicians testify that miscarriage was produced by the use of

an instrument, and this corresponds with the declaration of deceased, that an instrument would be required. The powders mentioned by Knauss were found in the house, and the prisoner confessed that she had prescribed them. The account which prisoner gave of her connection with the case, which appears to have been false, affords some confirmation of the testimony of Knauss. According to the testimony of the physicians, there was nothing to indicate that deceased had been suffering from *prolapsus uteri*, for which prisoner said that she had been treating her, while the real character of the injury which resulted fatally was plainly apparent. It is considered that the omission to contradict an accomplice as to a material statement in respect to which, if false, contradictory evidence is within the prisoner's power, may be regarded as a circumstance to corroborate the evidence of the accomplice. *People* v. *Dyle*, 21 N. Y. 578. If the bare omission to contradict the accomplice is a circumstance to corroborate his testimony, *a fortiori* the assertion of a falsehood in contradicting him, should be regarded as a circumstance to confirm his statement. Without entering into a general discussion of the evidence, it is sufficient to say that the testimony of Knauss is entirely consistent with the other evidence in the cause, and is so far supported by that evidence, that it would be difficult to reject it as unworthy of belief.

The evidence appearing to be sufficient to warrant the conviction, and there being no misdirection by the court, the mere omission to charge the jury upon points which the law would sanction, but does not require a charge to be given, is not, in our opinion, an error for which a new trial should be awarded. I concede that this rule should be carefully limited to cases in which it is apparent that the omission has not affected the result. I think that it can be safely applied to cases of this kind where counsel usually draw the attention of the jury to the character of the witnesses, and comment freely upon all circumstances tending to discredit them. If, as in this case, the jury are told by

the court to regard the discrediting circumstances, the testimony will not be overvalued.

The instruction asked as to the weight to be given to circumstantial evidence was correct in form and principle, and might have been given with propriety. But as it relates simply to the weight of evidence, and the jury were correctly advised as to the doctrine of reasonable doubt, the refusal of this instruction cannot be ground for new trial.

The prisoner having elected to testify under the act of 1872 (9 Sess. 95), her testimony became a fair subject of criticism before the jury, and the counsel for the people was at liberty to analyze her testimony, to compare it with the other testimony in the cause, and comment upon the omissions and contradictions, if any, therein. The prisoner was at liberty to contradict Knauss, and to give her own account of the matters related by him, and the fact that she did not do so might well be considered by the jury in determining the credibility of Knauss. *People* v. *Dyle, supra.* The prisoner was not required to testify, and by the terms of the statute if she had chosen to remain silent, no inference of guilt could be drawn from her conduct. By taking the witness stand she opened the door to criticism, and cannot now complain that an effort was made to measure her testimony by the ordinary rules which govern human conduct.

It is also alleged that the jury impaneled to try the cause was irregularly summoned, but there being no challenge to the array or other objection to the jury before trial, it is believed that this objection cannot be relied upon here.

We see no error in the record, and therefore the judgment will be affirmed.

*Affirmed.*