## No. 13,696.

### The People *v.* Wettengel et al.
(58 P. [2d] 279)

Decided December 16, 1935.   Rehearing denied March 16, 1936.

Mr. Max D. Melville, Mr. Thomas K. Younge, for the people.

Mr. A. L. Betke, Mr. George A. Crowder, for defendant in error Wettengel.   No appearance for defendant in error Blackwell.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

December 16, 1934, a grand jury indicted Earl Wettengel, district attorney of the Second Judicial District,

James P. Blackwell and Lafayette B. Utter for, as the indictment is captioned, ''Conspiracy to Commit Bribery.'' Utter has not been apprehended nor has he appeared. Wettengel and Blackwell filed like motions to quash which, February 5, 1935, were sustained. The principal ground urged by the motions was that no facts sufficient to constitute the crime of conspiracy to commit bribery are shown by the indictment. It reads:

''The Grand Jurors, chosen, selected and sworn, in and for the City and County of Denver, State of Colorado, in the name and by the authority of the People of the State of Colorado, upon their oaths present:

''That on, to wit, the first day of January, A. D. 1932, and thence continuously to the seventeenth day of September, A. D. 1934, at, to wit, the City and County of Denver, State of Colorado, Lafayette B. Utter, James P. Blackwell, Earl Wettengel, who was then and there and for more than two years immediately prior thereto had been, the duly elected, qualified and acting district attorney in and for the second judicial district of the State of Colorado, which judicial district is comprised of the said City and County of Denver, and some other persons to the said Grand Jurors unknown, did unlawfully and feloniously agree, conspire and co-operate with each other to do, and to aid each other in the doing of, an unlawful and felonious act, to wit, the crime of bribery; which crime of bribery was thereafter to be committed by said defendants and each of them in the City and County of Denver, State of Colorado, by the said defendants Lafayette B. Utter and James P. Blackwell and each of them, and the said other persons unknown to the aforesaid Grand Jurors, directly and indirectly and unlawfully, giving sums of money and other bribes, presents and rewards and other things of value to the said Earl Wettengel, who would receive and accept the same, with intent to unlawfully induce and influence said Earl Wettengel to execute the powers in him vested, and to perform the duties of him required, with partiality and favor, and otherwise

than is required by law, in this, to wit, the said sums of money and other bribes, presents and rewards and other things of value were to be paid and delivered by the said Lafayette B. Utter and James P. Blackwell and each of them to the said Earl Wettengel, and were to be received and accepted by him, to induce and influence him, the said Earl Wettengel, to permit the said Lafayette B. Utter and James P. Blackwell and each of them to unlawfully own, install, keep, exhibit, maintain, conduct, use and operate gambling rooms, houses, devices, slot machines and other gambling games, instruments, devices, apparatus and paraphernalia to win and gain money and other property by gambling in the said City and County of Denver, State of Colorado, without molestation, interference, seizure, destruction or prosecution by him, the said Earl Wettengel, or by his agents, deputies or employes, or by other law enforcement agencies or officers of the City and County of Denver; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the People of the State of Colorado.''

In our view it is plain that the indictment attempts to do what its caption would indicate its drawers had in mind; that is, to charge that Blackwell, Utter and Wettengel conspired with each other that thereafter Blackwell and Utter should give, and Wettengel should receive from them, things of value, to the end that Wettengel should permit Blackwell and Utter to maintain gambling devices without molestation from his office. The question is, Do these allegations, if true, constitute the crime of conspiracy to commit bribery? The answer, urged upon us by counsel for the district attorney, and which we conclude is a correct statement of the law, is that there is not, in the law, any such crime as conspiracy to commit bribery where the conspiracy is charged to have included both the prospective giver and the prospective receiver.

The bribery statute, Compiled Laws 1921, section

6781, requires that to constitute the crime of bribery the act of two persons is essential, that of him who gives and of him who receives; their minds must concur. *Newman v. People,* 23 Colo. 300, 47 Pac. 278. The statute, section 1781, R. S. U. S., under consideration in *United States v. Dietrich,* 126 Fed. 664, was to the same import. There it was charged that Dietrich, a United States senator, had conspired with a constituent that the senator should receive and the constituent should pay a sum of money for the "use of the influence incident to his official station." There, as here, the defendant argued that under such circumstances conspiracy could not be charged. We shall not endeavor to elaborate upon the doctrine; it is well set forth in the Dietrich case at page 666 in these words: "As the transaction is stated in the indictment, it was Dietrich who agreed to receive the bribe, not Dietrich and Fisher, and it was Fisher who agreed to give the bribe, not Fisher and Dietrich. The charge is not that two or more persons agreed among themselves to corruptly obtain the aid of another, a member of Congress, in securing the appointment of some aspirant to a federal office, nor is it that two or more members of Congress agreed among themselves to obtain from another person a reward or compensation for their services or aid in securing such an appointment. Such an agreement would constitute a conspiracy to commit an offense against the United States, and, if followed by the doing of any act by one of the conspirators to effect its object, would be punishable under section 5440. * * * The agreement or transaction stated in this indictment was immediately and only between two persons, one charged with the intended taking and the other with the intended giving of the same bribe. Concert and plurality of agents in such an agreement or transaction are, in a sense, indispensable elements of the substantive offenses, defined in section 1781, of agreeing to receive a bribe and of agreeing to give one. A person cannot agree with himself, receive from himself, or give to himself. The concurrent and

several acts of two persons are necessary to the act of agreeing, receiving, or giving. In this respect, agreeing to receive a bribe from another and agreeing to give one are unlike soliciting or offering a bribe, because the solicitation or offer may be the act of a single person and may occur without any concurrent act of another. The rule stated by Wharton (2 Cr. L. §1339) is applicable here:

" 'When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained. As crimes to which concert is necessary (i. e., which cannot take place without concert), we may mention dueling, bigamy, incest, and adultery, to the last of which the limitation here expressed has been specifically applied by authoritative American courts.'

"* * * The fact that section 1781 makes the act of agreeing to receive, and also that of agreeing to give, a bribe, under the circumstances and for the purpose described in this indictment, a substantive offense, even though the bribe be not actually received or given, brings this case fully within the rule so stated."

See, also, *Chadwick v. United States*, 141 Fed. 225; *United States v. New York Co.*, 146 Fed. 298; *Gebardi v. United States*, 287 U. S. 112, 53 Sup. Ct. 35, 77 L. Ed. 206; *United States v. Sager*, 49 F. (2d) 725; *People v. Keyes*, 284 Pac. (Cal.) 1105. In the Gebardi case the man transporting and the woman transported were charged with conspiracy to violate the Mann Act. The court said (p. 121): "Of this class of cases we say that the substantive offense contemplated by the statute itself involves the same combination or community of purpose of two persons only which is prosecuted here as conspiracy. If this were the only case covered by the act, it would be within those decisions which hold, consistently with the theory upon which conspiracies are punished, that where it is impossible under any circumstances to commit the sub-

stantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law, * * * or under the federal statute.''

And so here. The preliminary agreement said to have existed between Wettengel and Blackwell and Utter is not an indictable conspiracy, for the substantive offense, bribery, itself required the cooperative action of those charged below to have been conspirators.

We think the Colorado cases which impel Mr. Chief Justice Butler to dissent are distinguishable.

Let the judgment be affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE HOLLAND concur.

MR. JUSTICE BURKE concurs in the conclusion.

MR. CHIEF JUSTICE BUTLER, MR. JUSTICE BOUCK and MR. JUSTICE YOUNG dissent.

MR. CHIEF JUSTICE BUTLER, dissenting.

If it were not for our holdings in *Solander v. People,* 2 Colo. 48, *Johnson v. People,* 33 Colo. 224, 80 Pac. 133, and *Max v. People,* 78 Colo. 178, 240 Pac. 697, I would be disposed to concur in the decision. Those cases involved murder by abortion, and in each case the trial court admitted declarations by the woman made out of the presence of the defendant. Whether such declarations were admissible depended upon whether there could be a conspiracy between a woman and another person to commit the crime of abortion upon the woman. We held that there could be; and we held, further, that the declarations were properly admitted, because in each case the woman conspired with the defendant to procure the abortion, and where there is a conspiracy a declaration by one of the conspirators is admissible against the other when made in furtherance of the common design. In the Solander case we said, among other things: ''* * * where it ap-

pears that the woman not only submits to the unlawful attempt, but actively promotes it, by seeking the aid of others, and eagerly adopting the means suggested to accomplish the crime, it cannot be claimed that she is not a party to the criminal design. If the woman is not technically an accomplice, she may, nevertheless, conspire with others to produce the abortion, and the conspiracy being shown, her acts and declarations in furtherance of the common design are evidence against others engaged with her in the criminal act." Two persons were there concerned; one was to give the illegal treatment, the other was to receive it. They had a common design—a common criminal purpose—to procure an abortion. There was, therefore, a conspiracy. If there were any difference in principle between those cases and the present one, the majority opinion doubtless would have specified wherein that difference consists. I am unable to see any such difference.

I respectfully dissent for the reasons stated above.

MR. JUSTICE BOUCK, dissenting.

The majority opinion condemns as worthless the indictment herein. This indictment purports to charge a conspiracy to commit, or to aid in committing, bribery; the alleged prospective bribe-taker being the defendant Wettengel, and the alleged bribe-givers being the defendants Utter and Blackwell, while it is alleged that other persons unknown to the grand jurors conspired with them to do or aid in doing the crime.

If the majority opinion becomes the law, there can never be in Colorado a conviction of those who are willing to work public and private corruption by taking or giving bribes, unless a bribe is actually given and taken. No matter how black a conspiracy may exist, or how eager the prospective giver or taker of bribes may be, a conspirator could not under the majority opinion be punished if, owing to sudden fear of discovery or to the

alarm of an evil conscience, or otherwise, he should stop short of carrying out the intended crime.

The bald statement is so startling that it shocks one's notions of law and justice.

Our statute on conspiracy is, I think, perfectly clear. So far as here applicable it says: "If any two or more persons * * * shall agree, conspire or co-operate to do, or to aid in doing any other unlawful act, each of the persons so offending shall on conviction, in case of a conspiracy to commit a felony, be confined in the penitentiary for a period of not less than one year, nor more than ten years * * *." Compiled Laws, 1921, page 1759, §6810.

Our statute on bribery, so far as it bears upon the charge in the present indictment, is, I think, just as clear. It is this: "If any person shall directly or indirectly give any sum or sums of money, or any other bribe, present or reward, * * * to any * * * prosecuting attorney * * * with intent to induce or influence such officer to * * * execute any of the powers in him vested, or perform any duty of him required with partiality or favor, or otherwise than is required by law, * * * the person so giving and the officer so receiving any money, bribe, present, reward, * * * with intent or for the purpose or consideration aforesaid, shall be deemed guilty of bribery, and on conviction, shall be punished by confinement in the penitentiary for a term of not less than one year, nor more than five years." Compiled Laws, 1921, page 1754, §6781.

There seems to be no good reason why this court should nullify such plain language of acts regularly passed by the General Assembly, an equal and coordinate branch of our state government.

On the contrary, in *Sheely v. People,* 54 Colo. 136, 140, 129 Pac. 201, 203, this court said: "A primary rule of construction is that the intention of the legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in the

light of the mischief to be remedied. While there is a rule requiring the strict construction of a penal statute, that rule is not violated by giving to the words their full meaning, in the connection in which they are employed. *Woodworth v. State,* 26 Ohio St. 196.'' The Sheely case involved bribery of a public officer under the above statute. In the present case the indictment charges conspiracy to commit, and to aid in committing, similar bribery.

It is my belief that the majority opinion is not good law. In the first place, as already stated, it goes against the plain language of our statutes. In the next place, it ignores the facts existing in the cases it cites as authorities, and misinterprets the law laid down in those authorities. Thirdly, it runs counter to the principle laid down in *Solander v. People,* 2 Colo. 48.

1. The failure of the majority to give full effect to the above quoted statutes, duly enacted by our state legislature, is self-evident. I shall refrain from discussing it at this time, contenting myself with the quotation already given from the Sheely decision.

2. As for the facts, the cases cited in the majority opinion were based upon facts entirely different from those set forth by the indictment in the case at bar.

The cases so cited invite discussion.

In *United States v. Dietrich,* 126 Fed. 664, which obviously is relied upon by the defendants here as their defensive bulwark, conspiracy to commit bribery was alleged against a United States senator and one of his office-seeking constituents. No other person than these two was alleged to have conspired with them. Unlike our Colorado bribery statute, one of the United States statutes on which the prosecution was based made it bribery not only to give or to take a bribe, but likewise to agree to give, or to agree to take. Mere agreement thus being itself made a substantive crime, and being the very form of bribery which was there expressly alleged, the circuit court in Nebraska properly held that such

agreement, which would have to be the gist of any related conspiracy, could not constitute two separate crimes by stating the same crime in two different ways; that the indictment charged bribery for which both defendants were absolutely necessary, and not a conspiracy by the same two persons, no others being joined. By the very words of the indictment and under the express definition of the federal statute, the conspiracy and the contemplated bribery were shown to be made up of exactly the same elements as to each of the two indispensable defendants. The court took judicial notice that a prosecution for the consummation of the alleged bribery was then pending. The prospective giver and the prospective taker being the only ones charged with conspiring, no conspiracy could therefore exist, since the supposed conspiracy included the essential agreement required in the bribery itself. In other words, it was held that conspiracy could not, on the strength merely of that same common agreement, be charged in addition to an exactly duplicate offense of "bribery."

The dissimilarity between the Dietrich case and our own, because of different facts, different statutes and consequently different legal conclusions, is palpable.

Undertaking to adapt the Dietrich doctrine to the present case in spite of these differences clearly results in a basic fallacy of the majority opinion. When, as in this case, the conspiracy indictment implicates others than simply those who are absolutely necessary for the commission of the bribery, the case is at once removed from under the Dietrich doctrine. I discuss below some of Justice Hilliard's own citations.

In *Chadwick v. United States,* 141 Fed. 225, the conspiracies alleged were to violate federal statutes prohibiting certification of checks on insufficient or nonexistent bank deposits. The circuit court of appeals for Ohio expressly held that the case did not come within the principle claimed to have been announced in *United*

*States v. Dietrich,* and the convictions on the conspiracy charges were sustained.

In *United States v. N. Y. Cent. & H. R. R. Co.,* 146 Fed. 298, the charge was conspiracy to violate the federal statute prohibiting rebates by common carriers. While the analogy of the case to the Dietrich case was referred to, the decision was evidently based upon the conclusion that conspiracy did not lie because of a later federal act forbidding imprisonment for such violations.

In *Gebardi v. United States,* 287 U. S. 112, decided in 1932, a man and a woman were charged with conspiracy to violate the Mann Act by transporting the woman defendant. The decision was based upon the view that the Mann Act was enacted for the purpose of punishing the man who transported, and not the woman. Mr. Justice Stone expressly disclaimed the application of the doctrine of the Dietrich case to the facts before him. He distinguished that case, and said (at page 122, note 6) : "The conspiracy was also deemed criminal where it contemplated the cooperation of a greater number of parties than were necessary to the commission of the principal offense, as in *Thomas v. United States,* 156 Fed. 897; *McKnight v. United States,* 252 Fed. 687; cf. *Vannata v. United States,* 289 Fed. 424; *Ex parte O'Leary,* 53 F. (2d) 956. Compare *Queen v. Whitchurch,* 24 Q. B. D. 420." The last case mentioned was decided by the Queen's Bench Division of the High Court of Justice seventeen years after and in harmony with *Solander v. People,* 2 Colo. 48, cited by Mr. Chief Justice Butler in his dissenting opinion herein.

These cases have a distinct bearing upon the limits to be set for the Dietrich doctrine. There is deducible from these and other authorities the proposition which I have already discussed, namely, that it is legal to charge conspiracy even against those committing, or contemplating the commission of, crimes such as are properly within that doctrine, provided the conspiracy is alleged and proved against one or more persons in addition to those

who are indispensable to commission of the substantive crime. Conspirators mentioned as unknown to the grand jury count the same as those known.

In *United States v. Sager*, 49 F. (2d) 725, the decision on one point was primarily based upon the fact that the defendants were charged with bribing a juror and convicted thereof under the wrong section of a United States statute, and on another point it was to the effect that conspiracy could not be charged against the defendants because prospectively they were all either givers or takers of the contemplated bribes.

In *People v. Keyes*, 284 Pac. 1105 (Cal.), the Supreme Court of California withheld its approval of certain portions of a notable opinion handed down by the District Court of Appeal of that state. See s. c., Id. 1096. By virtue of special statutes of California the decision became a rather surprising one. It rested upon the proposition that, whereas the statutes provided the same punishment for a substantive crime as for a conspiracy to commit it, and whereas, like the federal statute in the Dietrich case, they defined bribery as agreeing to give or take a bribe, and not merely as giving or taking it, the defendant district attorney's conviction must be sustained because, though he was found guilty of conspiracy, he was really guilty of bribery, and therefore he was not prejudiced. The conviction was accordingly sustained. This, truly, is scant authority for the defendants in this case.

3. I need not add anything to what has been said by Mr. Chief Justice Butler on the Solander case, supra, in his dissenting opinion. Were there no other reason for urging the reversal of judgment in this case, the one based upon the Solander case seems to me conclusive. I regret that, while the majority opinion considers the Solander case and others like it to be "distinguishable," there is no attempt to distinguish them.

4. Of course, the important point is that, unless the defendants Utter and Blackwell can be held on the pres-

ent charge of conspiracy, they will go scot-free. It is conceded that the briberies which are alleged as the object of the defendants' conspiracy were not actually committed. Finespun arguments have sometimes been directed against conspiracy, as we have seen. These are sometimes based upon the proposition that there is double jeopardy because of the virtual identity of the ultimate crime with the antecedent conspiracy. These arguments fall to the ground where, as here, there is no claim that bribery has been committed as planned. There could, in the present circumstances, never be a prosecution for the contemplated crime. Hence the defendants could never be in jeopardy on that account.

I submit that the correct interpretation of the Dietrich case leads to the following as the proper rule even under the strict doctrine of that case:

*By going outside the intimate circle of those immediately necessary to the commission of the contemplated substantive crime, and by conspiring with others who are not absolutely necessary parties to such commission, the absolutely necessary parties have automatically lost any right they might have had to object to the conspiracy on the principle laid down in the Dietrich case, as analyzed by the later decisions.*

Lack of time and space will not permit my mentioning the numerous later decisions analyzing the Dietrich case, except those cited in the majority opinion and already discussed above.

However, beyond all rules and all interpretations in other jurisdictions is the fundamental truth that the statutes of this state, as heretofore interpreted by this court, supply a simple solution of our problems by saying that conspiracy to commit a crime or to aid in its commission is itself a different and distinct crime, to be punished as the General Assembly has directed. These statutes have hitherto been accorded by this court the full efficacy of their language. Some other jurisdictions have employed metaphysical refinements and antiquated reasons which

do not comport with the spirit of modern Colorado jurisprudence. The concoction of plans for law breaking usually occurs in dark and secret places. Fortunate, indeed, is the prosecutor who can discover this preliminary conspiracy stage of crime so as thereby to avert the crime itself.

Not to be able to punish the conspirator who goes as far toward crime as he can and then fails, would be, in my humble opinion, a confession of impotence such as the judicial department ought not to make in the face of the clear and unambiguous statutes which the legislative department has enacted.

For the reasons above stated, I respectfully dissent.